## GENERAL MOTORS ACCEPTANCE CORPORATION v. SWAIN.

### No. 1751.

Court of Appeal of Louisiana. First Circuit.

Nov. 6, 1937.

ton Evans, Inc., an automobile dealer of Baton Rouge. The dealer had the defendant sign a sales slip which shows, among other things, that the cash price of the car sold was $350, to which was added a charge for notary fee of $5, and a like amount for "Ter. Charges," whatever that means, and a "handling charge" of $80.10, making a total of $440.10. On the credit side of the slip is shown a cash payment of $80 and credit for an old car of $25, a total of $105, leaving a deferred balance of $335.10.

On the same date, defendant signed a note for this balance of $335.10, payable in eighteen monthly installments, beginning August 15, 1935, seventeen installments being for $18.67 each, and the last one being for $17.71, with interest at the rate of 8 per cent. per annum from maturity, together with attorneys' fees of 25 per cent. on 'the amount due in case default was made in the payments. To secure this note, defendant executed a chattel mortgage on the car sold him, in which mortgage the recital is made that the total time price of the car was $440.10, payable $105 cash, and the deferred balance of $335.10, represented by a note payable in installments as stated above. Before any of the installments were due, the note was transferred by the dealer to the plaintiff herein.

Defendant paid $122.77 on said note, and then defaulted in his payments. This suit is to recover the balance of $212.33, plus interest, attorneys' fees, and cost, with recognition of the lien and privilege on the car under the mortgage. The defense is that plaintiff is not a holder of the note in due course; that the entire note is illegal, null, and void, for the reason that a greater rate of interest is charged on the cash price of the car than is allowed by law; that the interest rate is illegal and the note void under the provisions of Act No. 7 of the Extra Session of 1928, known as the Small Loan Act.

The defendant also filed exceptions of vagueness and of no cause or right of action, which were overruled, and, as these exceptions are not pressed in this court, we assume they have been abandoned. The case is here on a devolutive appeal by defendant from a judgment against him as prayed for in the petition.

It is shown by the testimony of the state manager of plaintiff corporation that the item added on the sales slip to the cash price of the car designated as handling charges in the amount of $80.10 is made up

Albritton, Hardin & Ware, of Baton Rouge, for appellant.

W. G. Randolph, of Baton Rouge, and O'Niell & O'Niell, of New Orleans, for appellee.

OTT, Judge.

On July 15, 1935, the defendant purchased a secondhand automobile from W. Mor-

of $28 for insurance on the car, $3 an overcharge, and a handling charge, or differential of $49.10. The overcharge was credited on the note and the $28 was paid out for insurance, so that the actual amount collected by plaintiff on this differential was $49.10, which is designated as a handling charge. Plaintiff furnished the dealer with a chart by which the dealer could figure the amount to be added to the cash sale price of a car to cover the differential in case the dealer should desire plaintiff to handle the deferred balance in order for the dealer to realize the cash sale price on the car sold. The plaintiff also furnished the dealer with the blank notes and chattel mortgages to be used in the transactions where it handled the paper. In this particular case, it is shown that plaintiff credited to defendant the overcharge on the differential the day after it acquired the note. In view of these circumstances, it must be assumed that plaintiff was fully aware of the manner in which the differential had been figured and the terms on which the car had been sold.

■ Consequently, plaintiff is in the same position with reference to the defense here made on the note as the dealer and original holder would have been had the suit been brought by the dealer instead of plaintiff. Therefore, if there was an infirmity in the note on account of usury, the defendant has the same right to plead this infirmity against the plaintiff as he could have pleaded against the original holder. Negotiable Instruments Law, Act No. 64 of 1904, sections 52, 56, and 58.

■ The sale slip shows the cash price of the car and the act of chattel mortgage shows the time price. These added items over and above the cash price, including the differential of $49.10, are nothing more than added costs to the purchaser because of the sale being on credit. The amount of $49.10 charged for handling the deferred payments is not interest on the cash price, but is an added charge for making the sale on a credit with the accompanying risks assumed in the collection of the balance and in the enforcement of a lien on perishable property.

■ There is nothing to prevent a vendor and a purchaser from agreeing on a credit price for an article in excess of the cash price, although the added price for the credit sale over the cash price exceeds the legal interest rate, so long as there is no fraud nor intention of defeating the usury laws.

■ We find the issue presented in this case to be identical with that in the case of Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437. In that case, the decision of the Alabama Supreme Court is reflected in the syllabus, as follows: "Exacting a credit price for an automobile in excess of the legal interest on the cash price is not usurious." See Annotation in 48 A.L.R. 1442.

The law announced in the above case is not only the law in the other states, but is also the law in Louisiana. Robbins v. Page & Son, 10 La.App. 207, 120 So. 683; Mills v. Crocker, 9 La.Ann. 334.

Learned counsel for defendant cite and rely on the case of Dendinger, Inc., v. Emuy & Eichorn et al., 12 La.App. 39, 124 So. 604; but we do not find the facts in that case similar to the present case. In the cited case, the sale of the lumber was made for a fixed cash price, and it was provided that if the price was not paid by the end of the month following that in which the sale was made, 10 per cent. was to be added to the price. It is clear in that case, and the court so held, that the 10 per cent. increase in the price was to be made on account of the delay in the payment of the fixed cash price, and for that reason was an attempt to impose a penalty for the nonpayment of an amount due, which constituted the 10 per cent. interest. But in this case, the cash price was not agreed upon as the terms of the sale, but the credit or time price was fixed by the parties in their contract as the amount to be paid for the car. This they had a right to do.

■ The amount added to the cash price to make up the credit price was not interest, and, therefore, the Small Loan Act could have no application to the case. That law applies to loans of $300 or less, and to persons, copartnerships, or corporations making loans of money, credit, goods, or things in action in said amounts. The act did not change the law relating to bona fide sales of property and the fixing of a cash and credit price for the sale of property in the usual course of business.

For the reasons assigned, the judgment is affirmed.